**FILED**

**NOV 18 2008**

Clerk, U.S. District and
Bankruptcy Courts

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | CRIMINAL NO. 08-341 (SEALED) |
| ) | |
| v. ) | Let this be filed. |
| ) | Royce C. Lamberth |
| **JEREMY P. RIDGEWAY,** ) | U.S.D.J. 11/18/08 |
| ) | |
| Defendant. ) | |

### FACTUAL PROFFER IN SUPPORT OF GUILTY PLEA

The defendant Jeremy P. Ridgeway and the United States agree that the following facts are true and correct, and that if this matter were to proceed to trial the United States would prove these facts beyond a reasonable doubt:

1. Throughout September 2007, defendant Ridgeway worked as an independent contractor and employee of Blackwater Worldwide, a contractor of the Department of State (DOS), to provide personal security services for DOS diplomats and other United States Government personnel in the city of Baghdad, in the Republic of Iraq. Defendant Ridgeway's employment as a Blackwater contractor related to supporting the mission of the Department of Defense in Iraq.

2. The events described herein took place at the Nisur Square traffic circle in Baghdad, Iraq, on land that was commonly used for the purposes of United States diplomatic, consular, military and other United States Government missions and entities in Baghdad. Nisur Square is located just outside a fortified area of central Baghdad known as the "International Zone" (also commonly known as the "Green Zone"), where most, if not all, of the foreign embassies in Iraq are located, including the United States Embassy.

3. On September 16, 2007, defendant Ridgeway and eighteen other Blackwater independent contractors were assigned to a convoy of four heavily-armored trucks known as a Tactical Support Team, using the call sign "Raven 23," whose function was to provide back-up fire support for other Blackwater personal security details operating in the city of Baghdad. Defendant Ridgeway was assigned to a turret gunner position on the last truck of the Raven 23 convoy, and he was armed with an M-4 assault rifle, an M-240 machine gun, and a 9-mm Glock pistol.

4. The government's evidence would prove that on September 16, 2007, at least six members of the Raven 23 convoy, including defendant Ridgeway, opened fire with automatic weapons and grenade launchers on unarmed civilians located in and around Nisur Square in central Baghdad, killing at least fourteen people, wounding at least twenty people, and assaulting but not injuring at least eighteen others. None of these victims was an insurgent, and many were shot while inside of civilian vehicles that were attempting to flee from the Raven 23 convoy. One victim was shot in his chest, while standing in the street with his hands up. At least eighteen civilian vehicles were damaged, some substantially, by gunfire from the Raven 23 convoy.

5. On September 16, 2007, at around noon, the Raven 23 convoy was responding to the detonation of a vehicle-borne improvised explosive device (VBIED) that had been just exploded in the vicinity of a different Blackwater personal security detail located about a mile away from Nisur Square, and which was transporting a State Department protectee. Defendant Ridgeway and the other members of the Raven 23 convoy understood that their mission was defensive in nature, and that they were not permitted to engage in offensive military actions, use the military tactic known as "suppressive fire," or exercise police powers. Defendant Ridgeway and the other members of the Raven 23 convoy understood that they were only authorized to discharge their firearms in self-defense and as a last resort.

6. As a condition of their employment as State Department contractors, defendant Ridgeway and the other members of the Raven 23 convoy each signed a written acknowledgment form, agreeing to abide by the use-of-force policies set forth in the State Department Mission Firearms Policy for Iraq. The Mission Firearms Policy provided:

> The touchstone of the Embassy Baghdad policy regarding the use of deadly force is **necessity**. The use of deadly force must be objectively reasonable under all the circumstances known to the individual at the time . . . The necessity to use deadly force arises when all other available means of preventing imminent and grave danger to a specific individual or other person have failed or would be likely to fail. Thus, employing deadly force is permissible when there is no safe alternative to using such force and without the use of deadly force, the individual or others would face imminent and grave danger.

Mission Firearms Policy, United States Embassy, Baghdad, Iraq, at 4 (emphasis in original). The Mission Firearms Policy also recognizes that the reasonableness of a belief or decision must be viewed from the perspective of the individual on the scene, who may often be forced to make split second decisions.

7. The government's evidence would prove that the Raven 23 convoy had not been authorized to depart from the International Zone on September 16, 2007. Shortly after having done so, the Raven 23 convoy had been specifically ordered by the Regional Security Office at the United States Embassy to return to the International Zone as soon as possible. In contravention of that order, the Raven 23 convoy, under the command of its shift leader, proceeded to set up a blockade at Nisur Square to stop civilian traffic from flowing through the traffic circle.

8. The government's evidence would prove that the four heavily-armored vehicles in the Raven 23 convoy entered Nisur Square from the east side of the circle – traveling against the flow of traffic – and then positioned themselves in a line on the southern half of the circle, in order to block any traffic from entering the circle from the south or west. Seconds after the Raven 23

convoy entered the traffic circle, the Blackwater independent contractors from the third vehicle opened fire on a white Kia sedan that had been approaching the traffic circle from the south. Those initial shots killed the driver of the vehicle, who was later identified as a second-year medical student named Ahmed Haithem Ahmed Al Rubia'y.

9. Defendant Ridgeway heard the initial shots coming from the Blackwater truck in front of him, and then observed one of his teammates firing a machine gun into the front driver's side windshield of the white Kia sedan. Defendant Ridgeway noticed that the white Kia sedan was also occupied by a front passenger, whom defendant Ridgeway could not clearly see, but who appeared to be moving his or her arms. Defendant Ridgeway also saw an individual standing on the street in close proximity to the white Kia sedan. Defendant Ridgeway then fired multiple rounds from his M-4 assault rifle into the front passenger's side windshield of the white sedan, killing the passenger. At the time he fired those rounds into the white Kia sedan, defendant Ridgeway intended to kill the passenger of that vehicle, who was later identified as Dr. Al-Khazali, the mother of the driver, Mr. Al Rubia'y. The individual standing on the street in close proximity to the white Kia sedan was later identified as an Iraqi traffic police officer, who had responded to the initial shooting at that vehicle.

10. In addition to defendant Ridgeway, several other members of the Raven 23 convoy fired their weapons into the white Kia sedan. At least one member of the convoy also launched an M-203 grenade at the white Kia sedan, which exploded under the passenger compartment of the vehicle, rupturing and igniting the fuel lines and causing the vehicle to erupt in flames. A high volume of rounds were fired into the front grille, hood, and windshield of the white Kia sedan.

11. Given that the first shots were fired at the white Kia sedan seconds after the Raven 23 convoy had arrived in the traffic circle, defendant Ridgeway recognized that there had been no attempt to provide reasonable warnings to the driver of that vehicle to come to a complete stop prior

to the use of deadly force by members of the Raven 23 convoy. As provided in the Mission Firearms Policy, reasonable warnings would have included the (1) use of hand and verbal warnings, (2) firing of pen flares, (3) pointing of weapons at the vehicle, and/or (4) firing of rounds into the engine block.

12. Minutes later, as the Raven 23 convoy departed from Nisur Square and proceeded against the flow of traffic to the north of the circle, turret gunners in the convoy continued to fire their machine guns at civilian vehicles that posed no threat to the convoy. Defendant Ridgeway fired at least three rounds from his M-4 assault rifle into the roof of a white Chevrolet Celebrity sedan that was next to the convoy, and wounded the driver of the white Chevrolet Celebrity, who was later identified as Abdul Wahab Abdul Qadar Al-Qalamchi. Shots from defendant Ridgeway's assault rifle struck Mr. Al-Qalamchi in the right shoulder and arm, causing permanent and life-threatening injury, including obvious, permanent disfigurement to Mr. Al-Qalamchi. Bullet fragments also penetrated Mr. Al-Qalamchi's leg. At the time he fired those rounds into the white Chevrolet Celebrity, defendant Ridgeway intended to kill the driver of that vehicle.

13. When defendant Ridgeway fired his assault rifle into the white Kia sedan and the white Chevrolet Celebrity, he acted knowingly, unlawfully, purposefully, and not by accident, inadvertence, or mistake, or with any legal excuse or justification. Defendant Ridgeway's use of deadly force in both instances was not objectively reasonable under all of the circumstances as they appeared to him at the time.

14. With respect to the white Kia sedan, defendant Ridgeway understood that the first shots were fired by his teammate seconds after the Raven 23 convoy had arrived in the traffic circle, the white sedan was moving slowly at the time that defendant Ridgeway fired at that vehicle, and one individual was standing in close proximity to the sedan at that time. A reasonable person in defendant Ridgeway's situation would have recognized that there were other safe alternatives to the

use of deadly force against the passenger of the white Kia sedan. Moreover, a reasonable person in defendant Ridgeway's situation would have recognized that the white Kia sedan did not exhibit any indicia of a VBIED attacker as provided in the Mission Firearms Policy. The vehicle was moving slowly and had more than one occupant. The vehicle was not "riding heavy" or "lop-sided." The vehicle was not occupied by a single driver "wearing a bandana," who appeared to be "fixated on the motorcade," or who appeared to be "talking to him/herself."

15. Similarly, with respect to the white Chevrolet Celebrity, defendant Ridgeway fired his shots into the roof of that vehicle as the Raven 23 convoy was approaching that vehicle from behind, and before defendant Ridgeway saw any occupant of that vehicle. A reasonable person in defendant Ridgeway's situation would have assessed whether the white Chevrolet Celebrity, including any occupant of that vehicle, posed any threat before using deadly force against the driver of that vehicle.

Respectfully submitted,

JEFFREY A. TAYLOR
United States Attorney
for the District of Columbia
D.C. Bar No. 498610

By: _____
Kenneth C. Kohl
D.C. Bar No. 476236
Assistant United States Attorney
National Security Section
(202) 616-2139
Ken.Kohl@usdoj.gov

_____
Jonathan M. Malis
D.C. Bar No. 454548
Assistant United States Attorney
National Security Section
(202) 305-9665
Jonathan.M.Malis@usdoj.gov

Dated: November 18, 2008

## Defendant's Stipulation and Signature

After consulting with my attorney, William Sullivan, and pursuant to the plea agreement entered into between me, Jeremy P. Ridgeway, and the United States, I hereby stipulate and agree that the above Factual Proffer in Support of Guilty Plea is true and accurate, and that had this matter proceeded to trial, the United States would have proved beyond a reasonable doubt the facts stated in the Proffer.

_18 Nov 2008_
Date

_____
Jeremy P. Ridgeway
Defendant

## Attorney's Acknowledgment

I am Jeremy P. Ridgeway's attorney. I have carefully reviewed the above Factual Proffer in Support of Guilty Plea with him. To my knowledge, his decision to stipulate and agree to these facts is an informed and voluntary one.

_11/18/08_
Date

_____
William Sullivan, Esq.
Counsel for defendant Jeremy P. Ridgeway